<table>
<tr><td><b>Fill in this information to identify the case:</b></td></tr>
</table>

United States Bankruptcy Court for the:

SOUTHERN _____ District of _____ TEXAS _____
                                    (State)

Case number *(if known)*: _____ Chapter 11 ____

☐ Check if this is an
   amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/22

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

| | | |
|---|---|---|
| 1. | **Debtor's name** | Curo Collateral Sub, LLC |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years** | |
| | Include any assumed names, trade names, and *doing business as* names | |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number (EIN)** | 85-2048845 |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 200 W. Hubbard St., Suite 800 | |
| Number      Street | Number      Street |
| | P.O. Box |
| Chicago,          IL          60654 | |
| City          State     ZIP Code | City          State     ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| County | Number      Street |
| | City          State     ZIP Code |

5. **Debtor's website** (URL)    www.curo.com

Debtor  Curo Collatral Sub, LLC
_____
Name

Case number *(if known)* _____

**6. Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

5  2  5  9

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☒ A plan is being filed with this petition.

☒ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

Debtor    Curo Collateral Sub, LLC
_____     Case number (if known) _____
          Name

| 9. | **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?** | ☒ No | | | | | |

If more than 2 cases, attach a separate list.

☐ Yes. District _____ When _____ Case number _____
                                    MM / DD / YYYY

        District _____ When _____ Case number _____
                                    MM / DD / YYYY

| 10. | **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?** |

List all cases. If more than 1, attach a separate list.

☐ No

☒ Yes. Debtor  SEE RIDER 1 _____  Relationship  Affiliate _____

        District  Southern District of Texas _____  When _____
                                                                    MM / DD / YYYY

        Case number, if known _____

| 11. | **Why is the case filed in this district?** |

Check all that apply:

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

| 12. | **Does the debtor own or have possession of any real property or personal property that needs immediate attention?** |

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (Check all that apply.)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                          Number        Street

                          _____

                          _____    _____
                          City                        State ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

        Contact name _____

        Phone _____

---

**Statistical and administrative information**

---

| Debtor | Curo Collateral Sub, LLC | Case number (if known) |
|---|---|---|
| | Name | |

---

**13. Debtor's estimation of available funds**

Check one:

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

---

**14. Estimated number of creditors (on a consolidated basis)**

| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
|---|---|---|
| ☐ 50-99 | ☒ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

---

**15. Estimated assets (on a consolidated basis)**

| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

**16. Estimated liabilities (on a consolidated basis)**

| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

### Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   3/25/2024
             MM / DD / YYYY

X _Gary L. Fulk_
  369061C4B17C43D...
Signature of authorized representative of debtor

Gary L. Fulk
Printed name

Title   President

---

Debtor   Curo Collateral Sub, LLC
_____
Name

Case number (*if known*)_____

---

**18. Signature of attorney**

**✗** /s/ Sarah Link Schultz
_____
Signature of attorney for debtor

Date   3/25/2024
_____
MM   / DD / YYYY

Sarah Link Schultz
_____
Printed name

Akin Gump Strauss Hauer & Feld LLP
_____
Firm name

2300 N. Field Street, Suite 1800
_____
Number        Street

Dallas                                    TX        75201
_____        _____   _____
City                                      State      ZIP Code

(214) 969-2800                            sschultz@akingump.com
_____        _____
Contact phone                             Email address

24033047                                  TX
_____        _____
Bar number                                State

---

# RIDER 1

## Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

As of the date hereof, each of the entities listed below (the "Debtors") filed a petition in the Bankruptcy Court for the Southern District of Texas for relief under chapter 11 of title 11 of the United States Code.  The Debtors will move for joint administration of these cases under the case number assigned to the chapter 11 case of CURO Group Holdings Corp.

| |
| --- |
| 1.  CURO Group Holdings Corp. |
| 2.  Covington Credit of Texas, Inc. |
| 3.  Curo Financial Technologies Corp. |
| 4.  Curo Intermediate Holdings Corp. |
| 5.  Curo Management, LLC |
| 6.  Curo Collateral Sub, LLC |
| 7.  CURO Ventures, LLC |
| 8.  CURO Credit, LLC |
| 9.  Ennoble Finance, LLC |
| 10. Ad Astra Recovery Services, Inc. |
| 11. Attain Finance, LLC |
| 12. First Heritage Credit, LLC |
| 13. First Heritage Credit of Alabama, LLC |
| 14. First Heritage Credit of Louisiana, LLC |
| 15. First Heritage Credit of Mississippi, LLC |
| 16. First Heritage Credit of South Carolina, LLC |
| 17. First Heritage Credit of Tennessee, LLC |
| 18. SouthernCo, Inc. |
| 19. Heights Finance Holding Co. |
| 20. Southern Finance of South Carolina, Inc. |
| 21. Southern Finance of Tennessee, Inc. |
| 22. Covington Credit of Alabama, Inc. |
| 23. Quick Credit Corporation |
| 24. Covington Credit, Inc. |
| 25. Covington Credit of Georgia, Inc. |
| 26. Heights Finance Corporation (IL) |
| 27. Heights Finance Corporation (TN) |
| 28. LendDirect Corp. |
| 29. CURO Canada Corp. |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Curo Collateral Sub, LLC | ) | Case No. 24-[_____] () |
| | ) | |
| Debtor. | ) | (Joint Administration Requested) |
| | ) | |

**LIST OF EQUITY SECURITY HOLDERS[1]**

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Curo Intermediate Holdings Corp. | **100%** |

---

[1] This list serves as the required disclosure by the Debtors pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure.  All equity positions listed are as of the date of commencement of the Chapter 11 Cases.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Curo Collateral Sub, LLC | ) Case No. 24-[_____] () |
| | ) |
| Debtor. | ) (Joint Administration Requested) |
| | ) |

## CORPORATE OWNERSHIP STATEMENT

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the Debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Curo Intermediate Holdings Corp. | **100%** (directly) |
| Curo Financial Technologies Corp. | **100%** (indirectly) |
| CURO Group Holdings Corp. | **100%** (indirectly) |

| Fill in this information to Identify the case: |
| --- |
| Debtor Name:   CURO Group Holdings Corp. |
| United States Bankruptcy Court for the:     Southern District of Texas |
| Case Number (If known): |

☐ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A consolidated list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | SPARROW PURCHASER, LLC, AND CCF INTERMEDIATE HOLDINGS LLC 7001 POST ROAD SUITE 200 DUBLIN, OH  43016 | CONTACT: MICHAEL J. DURBIN & SEAN OBRIEN MDURBIN@CCFI.COM; SOBRIEN@CCFI.COM | LITIGATION | CUD | | | $27,000,000.00 |
| 2 | GAYHARDT, DONALD ADDRESS ON FILE | EMAIL ON FILE | DEFERRED COMPENSATION PLAN/SEVERANCE | | | | $4,104,017.90 |
| 3 | GALILEO PROCESSING INC 6510 S. MILLROCK DRIVE SUITE 300 SALT LAKE CITY, UT  84121 | CONTACT: LEGAL OFFICER LEGAL@GALILEO-FT.COM | TRADE VENDOR | D | | | $1,050,000.00 |
| 4 | COOMBS, ANTHONY ADDRESS ON FILE | EMAIL ON FILE | SEVERANCE | | | | $773,873.06 |
| 5 | GOLDPOINT SYSTEMS (GPS) 1525 WEST 820 NORTH PO BOX 51427 PROVO, UT  84601 | CONTACT: JEREMY WHITE, PRESIDENT & CHIEF EXECUTIVE OFFICER PHONE: (801) 361-9258 JEREMYW@GOLDPOINTSYSTEMS.COM | TRADE VENDOR | | | | $713,582.84 |
| 6 | THOMAS IV, EUGENE ADDRESS ON FILE | EMAIL ON FILE | DEFERRED COMPENSATION PLAN | | | | $596,840.94 |
| 7 | MILESTONE VENTURES LLC 105 WHITSETT STREET SUITE B GREENVILLE, SC  29601 | CONTACT: ADAM CURTIN PHONE: 864-552-1444 ACURTIN@MILESTONEPARTNERS.COM | ACQUISITION PROCEEDS | | | | $526,905.76 |

Debtor: CURO Group Holdings Corp.

Case Number (if known): 

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 8 THE BANK OF MISSOURI 906 N KINGSHIGHWAY PERRYVILLE, MO 63775 | CONTACT: ADRIAN BREEN, CHIEF EXECUTIVE OFFICER, PRESIDENT & EXECUTIVE CHAIRMAN PHONE: 888-547-6541 FAX: 573-547-1826 MROBERTSON@BANKOFMIS SOURI.COM;MBARKER@BAN KOFMISSOURI.COM | TRADE VENDOR | | | | $500,000.00 |
| 9 CLOUDREACH, INC. 1230 6TH AVENUE 19TH FLOOR, SUITE 1906 NEW YORK, NY 10020 | CONTACT: MADDY GOLDFARB MADDY.GOLDFARB@CLOUD REACH.COM | TRADE VENDOR | | | | $495,111.94 |
| 10 ALLIED BUSINESS SYSTEMS, LLC (ABS) 4848 MERCER UNIVERSITY DR MACON, GA 31210 | CONTACT: CHRIS HALL, PRESIDENT, CHIEF EXECUTIVE OFFICER & CHAIRMAN PHONE: 800-727-7534 FAX: 866-386-6056 CHRIS.HALL@ALLIEDBIZ.COM | TRADE VENDOR | D | | | $406,391.00 |
| 11 BUTTS, THOMAS ADDRESS ON FILE | EMAIL ON FILE | DEFERRED COMPENSATION PLAN | | | | $403,685.29 |
| 12 DELL MARKETING L.P. ONE DELL WAY ROUND ROCK, TX 78682 | CONTACT: MICHAEL S. DELL, CHIEF EXECUTIVE OFFICER, CHAIRMAN OF THE BOARD PHONE: 512-723-0373 RAVI.TEGA.KONDA@DELLTEA M.COM | TRADE VENDOR | | | | $340,529.45 |
| 13 EQUIFAX CREDIT MARKETING SERVICES PO BOX 945510 CHARLOTTE, NC 28272-1221 | CUST.SERV@EQUIFAX.COM | TRADE VENDOR | | | | $327,170.29 |
| 14 GUIDEPOINT SECURITY LLC 2201 COOPERATIVE WAY SUITE 225 HERNDON, VA 20171 | CONTACT: JAKE CARRUTHERS PHONE: 877-889-0132 JAKE.CARRUTHERS@GUIDEP OINTSECURITY.COM | TRADE VENDOR | | | | $260,774.72 |
| 15 DIRECT MARKETING SOLUTIONS INC 8534 NE ALDERWOOD RD PORTLAND, OR 97220 | PHONE: 503-281-1400 JMARTIN@TEAMDMS.COM | TRADE VENDOR | | | | $256,441.13 |
| 16 GITLER, PHILIP MICHAEL ADDRESS ON FILE | EMAIL ON FILE | SEVERANCE | | | | $253,076.84 |
| 17 NATIONAL CREDIT ADJUSTERS LLC 327 WS 4TH AVE HUTCHINSON, KS 67501 | PHONE: 888-768-0674 INFO@NCAKS.COM | TRADE VENDOR | | | | $241,501.01 |
| 18 OPTINMIZELY NORTH AMERICA, INC 119 5TH AVE 7TH FLOOR NEW YORK, NY 10003 | CONTACT: GENERAL COUNSEL PHONE: 603-594-0249 GENERALCOUNSEL@OPTIMIZ ELY.COM | TRADE VENDOR | | | | $225,384.11 |

Debtor: CURO Group Holdings Corp.

Case Number (if known):

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 19 | CLARK, DOUGLAS ADDRESS ON FILE | EMAIL ON FILE | TRANSACTION BONUS | | | | $202,309.21 |
| 20 | DARNELL, CHRISTOPHER ADDRESS ON FILE | EMAIL ON FILE | DEFERRED COMPENSATION PLAN | | | | $186,301.54 |
| 21 | NORDIS TECHNOLOGIES 4401 NW 124TH AVE CORAL SPRINGS, FL 33065 | CONTACT: BRYAN TENNROEK PHONE: 954-323-5500 BTENBROEK@NORDISTECHNOLOGIES.COM | TRADE VENDOR | | | | $161,356.29 |
| 22 | MICROSOFT LICENSING, GP C/O BANK OF AMERICA 1950 N STEMMONS FRWY, STE 5010 LB 842467 DALLAS, TX 75207 | PHONE: 800-642-7676 FAX: 775-826-0531 | TRADE VENDOR | | | | $152,847.58 |
| 23 | GDS LINK HOSTING SOLUTIONS LLC 5307 E MOCKINGBIRD LN, STE 1001 DALLAS, TX 75206 | CONTACT: LISA BONALLE, CHIEF EXECUTIVE OFFICER PHONE: 214-256-5916 FAX: 214-295-2853 INFO@GDSLINK.COM | TRADE VENDOR | D | | | $138,250.00 |
| 24 | BRINKS CANADA LIMITED P.O. BOX 4590 TORONTO, ON M5W 7B1 CANADA | PHONE: 1-800-570-2867 BRINKSNCS@BRINKSINC.COM | TRADE VENDOR | | | | $133,338.24 |
| 25 | ALVARIA (NOBLE SYSTEMS CORPORATION) 1200 ASHWOOD DR. - SUITE 300 ATLANTA, GA 30338 | CONTACT: BRIAN WHITE BRIAN.WHITE@ALVARIA.COM | TRADE VENDOR | | | | $128,589.56 |
| 26 | SUN LIFE FINANCIAL PO BOX 11010 STATION CV MONTREAL, QC H3T 4T9 CANADA | CONTACT: ELLIOTT BACKES, ACCOUNT EXECUTIVE PHONE: 514-866-6411 PREMIUMSTATEMENTS@SUNLIFE.COM;ELLIOTT.BACKES@SUNLIFE.COM | TRADE VENDOR | | | | $126,535.03 |
| 27 | LEXISNEXIS RISK SOLUTIONS INC 28330 NETWORK PL CHICAGO, IL 60673-1283 | CONTACT: CHIEF LEGAL OFFICER FAX: 678-694-5939 LNBILLING@LEXISNEXISRISK.COM | TRADE VENDOR | | | | $102,620.22 |
| 28 | NETH, RANDALL ADDRESS ON FILE | EMAIL ON FILE | DEFERRED COMPENSATION PLAN | | | | $97,025.14 |
| 29 | MOREDIRECT INC DBA CONNECTION 1001 YAMATO RD STE 200 BOCA RATON, FL 33431-4403 | CONTACT: RUSSELL MADRIS PHONE: (561)237-3300 SIMPLIFYIT@MOREDIRECT.COM | TRADE VENDOR | | | | $94,020.73 |
| 30 | PELL, FRANKLIN ADDRESS ON FILE | EMAIL ON FILE | SEVERANCE | | | | $88,846.14 |

**Fill in this information to identify the case and this filing:**

Debtor Name  Curo Collateral Sub, LLC

United States Bankruptcy Court for the:  Southern          District of   Texas
                                                                          (State)

Case number (*If known*):  _____

---

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

---

| | Declaration and signature |
|---|---|

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐  *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐  *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐  *Schedule H: Codebtors* (Official Form 206H)

☐  *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐  Amended *Schedule* _____

☒  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒  *Other document that requires a declaration*  Corporate Ownership Statement, List of Equity Security Holders

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   3/25/2024            X  *Gary L. Fulk*
              MM / DD / YYYY           369061C4B17C43D...
                                       Signature of individual signing on behalf of debtor

                                       Gary L. Fulk
                                       Printed name

                                       President
                                       Position or relationship to debtor

*Execution Version*

**OMNIBUS ACTION BY WRITTEN CONSENT
OF THE SOLE DIRECTOR, THE SOLE MANAGER, THE BOARD OF DIRECTORS,
THE BOARD OF MANAGERS AND THE SOLE MEMBER, AS APPLICABLE,
OF THE ENTITIES SET FORTH ON SCHEDULE I**

**March __21__, 2024**

The undersigned:

(A) the sole director, the sole manager, all of the members of the board of directors, and all of the members of the board of managers, as applicable (collectively, the "***Boards***") of: (1) CURO Group Holdings Corp., a Delaware corporation ("***CURO***"), (2) Curo Financial Technologies Corp., a Delaware corporation, (3) Curo Intermediate Holdings Corp., a Delaware corporation ("***CIHC***"), (4) Ad Astra Recovery Services, Inc., a Nevada corporation, (5) SouthernCo, Inc., a Delaware corporation, (6) Heights Finance Holding Co., a South Carolina corporation, (7) Southern Finance of South Carolina, Inc., a South Carolina corporation, (8) Southern Finance of Tennessee, Inc., a Tennessee corporation, (9) Covington Credit of Alabama, Inc., an Alabama corporation, (10) Quick Credit Corporation, a South Carolina corporation, (11) Covington Credit, Inc., an Oklahoma corporation, (12) Covington Credit of Georgia, Inc., a Georgia corporation, (13) Covington Credit of Texas, Inc., a Texas corporation, (14) Heights Finance Corporation, an Illinois corporation, (15) Heights Finance Corporation, a Tennessee corporation, (16) Curo Credit, LLC, a Delaware limited liability company, (17) Attain Finance, LLC, a Nevada limited liability company, (18) Curo Management, LLC, a Nevada limited liability company, (19) First Heritage Credit, LLC, a Mississippi limited liability company, (20) First Heritage Credit of Alabama, LLC, a Mississippi limited liability company, (21) First Heritage Credit of Louisiana, LLC, a Louisiana limited liability company, (22) First Heritage Credit of Mississippi, LLC, a Mississippi limited liability company, (23) First Heritage Credit of South Carolina, LLC, a Mississippi limited liability company, (24) First Heritage Credit of Tennessee, LLC, a Mississippi limited liability company, (25) LendDirect Corp., an Alberta corporation, and (26) Curo Canada Corp., an Ontario corporation (the entities in items (25) and (26), the "***Canadian Subsidiaries***");

(B) CIHC, being the sole member of (1) Curo Credit, LLC, a Delaware limited liability company, (2) Attain Finance, LLC, a Nevada limited liability company, (3) Curo Management, LLC, a Nevada limited liability company, (4) Curo Collateral Sub, LLC, a Delaware limited liability company, (5) CURO Ventures, LLC, a Delaware limited liability company, and (6) Ennoble Finance, LLC, a Delaware limited liability company;

(each of (A) through (B), the "***Governing Bodies***" and, each individually, a "***Governing Body***") do hereby consent and agree in writing pursuant to (i) the applicable governing documents of the Companies (as amended, restated, amended and restated, supplemented or otherwise modified to date, the "***Operating Agreements***") and (ii) the Delaware General Corporation Law, the Delaware Limited Liability Company Act, the applicable provisions of the Nevada Revised Statutes, the South Carolina Business Corporation Act of 1988, the South Carolina Uniform Limited Liability Company Act of 1996, the Tennessee Business Corporation Act, the Tennessee Revised Limited Liability Company Act, the Alabama Business Corporation Law, the Oklahoma General

Corporation Act, the Georgia Business Corporation Code, the Texas Business Organizations Code, the Illinois Business Corporation Act of 1983, the Revised Mississippi Limited Liability Company Act, the Louisiana Limited Liability Company Law, the Business Corporations Act (Alberta) and the Business Corporations Act (Ontario), as applicable, to the adoption of the following resolutions in lieu of a meeting of the applicable Governing Bodies, the call and notice of which are hereby expressly waived, and authorize the taking of all actions contemplated hereby. The entities listed on <u>Schedule I</u> hereto are referred to herein as the "***Companies***" and each, a "***Company***".

**WHEREAS**, each Governing Body has reviewed and considered the materials presented by management and the financial and legal advisors to the Companies, including, but not limited to, King & Spalding LLP ("***KS***") and Akin Gump Strauss Hauer & Feld LLP ("***Akin***"), legal counsel to the Companies, Cassels Brock & Blackwell LLP, Canadian legal counsel to the Companies ("***Cassels***"), and Oppenheimer & Co. Inc. ("***Oppenheimer***"), investment banker to the Companies, on the date hereof regarding, among other things, the liabilities, assets and liquidity of each Company and the other direct and indirect subsidiaries of CURO, the strategic alternatives available to each Company and the potential impact (financial and otherwise) of the foregoing on each Company's respective businesses;

**WHEREAS**, in connection with each Governing Body's consideration of such liabilities, assets, liquidity, strategic alternatives and the impact thereof, each Governing Body has reviewed and evaluated the potential financing and/or restructuring alternatives available to each Company, including, but not limited to: (i) an equity or debt (including debtor-in-possession) financing; (ii) a reorganization; (iii) a merger, recapitalization, refinancing, amendment or exchange of the Companies' existing indebtedness or any of the Companies' capital stock, in each case, whether in-court or out-of-court and/or whether pursuant to a pre-negotiated or pre-planned restructuring plan or proposal or otherwise; (iv) a sale of some or all of the assets of the Companies; (v) the filing of voluntary petitions and seeking relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"); (vi) seeking relief pursuant to the *Companies' Creditors Arrangement Act* (Canada) R.S.C. 1985, c. C-36 as amended (the "***CCAA***") or the *Bankruptcy and Insolvency Act* (Canada) 1985, c. B-3; (vii) any combination of the foregoing; and (viii) any other strategic alternatives available to each Company (collectively, the "***Restructuring Alternatives***");

**WHEREAS**, each Governing Body has had the opportunity to consult with management and the financial and legal advisors to the Companies and to fully consider each of the strategic alternatives available to such Company, including, but not limited to, the Restructuring Alternatives;

**WHEREAS**, in contemplation of the foregoing, the Companies and the Companies' advisors have engaged with certain respective creditors of the Companies and other parties in interest in negotiating certain restructuring transactions (the "***Restructuring Transactions***") on the terms and subject to the conditions set forth in the Restructuring Support Agreement and the restructuring term sheet and other materials attached thereto, substantially in the form attached hereto as <u>Exhibit A</u> (the "***Restructuring Support Agreement***"), by and among (i) each of the Companies and (ii) non-affiliated holders of, or investment advisors, sub-advisors, or managers of discretionary accounts that hold, Prepetition 1L Term Loan Claims, Prepetition 1.5L Notes Claims

and Prepetition 2L Notes Claims in the Companies (the "***Consenting Stakeholders***");

WHEREAS, capitalized terms used but not otherwise defined in these resolutions shall have the meanings ascribed to them in the Restructuring Support Agreement;

WHEREAS, the Companies and the Consenting Stakeholders would agree pursuant to the Restructuring Support Agreement, among other things, for the Companies to effectuate the Restructuring Transactions by commencing voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***") and seeking recognition in Canada of the applicable chapter 11 cases and relief obtained therein by commencing a proceeding under Part IV of the CCAA in the Ontario Superior Court of Justice (Commercial List) (the "***Canadian Court***");

WHEREAS, each Governing Body, upon the advice of the Companies' advisors and after careful consideration of all of the facts and circumstances relating to each of the strategic alternatives available to the Companies, including, but not limited to, the Restructuring Alternatives, has determined that it is advisable and in the best interests of the Companies, their respective creditors, employees, equityholders and other parties in interest to enter into the Restructuring Support Agreement and to seek to consummate the transactions contemplated thereby, subject to the terms thereof;

WHEREAS, in connection with the implementation of the Restructuring Transactions and pursuant to the terms of the Restructuring Support Agreement, it is proposed that the Companies obtain secured debtor-in-possession financing on terms consistent with the Debtor-in-Possession Credit Facility Term Sheet attached hereto as Exhibit B (the "***DIP Facility Term Sheet***" and the facility contemplated thereby, the "***DIP Facility***"), which DIP Facility Term Sheet shall be agreed to by CURO, as borrower ("***Borrower***"), the other Companies (excluding the Canadian Subsidiaries), as guarantors (collectively such other Companies, the "***Guarantors***"), the administrative agent and the collateral agent thereunder (together, the "***DIP Agent***") and the lenders providing financing thereunder (the "***DIP Lenders***");

WHEREAS, in connection with the DIP Facility, it is proposed that the Guarantors will guarantee the obligations of Borrower in accordance with the DIP Facility Term Sheet and each Company will grant to the DIP Agent and the DIP Lenders liens on, and continuing security interests in, substantially all of such Company's property, whether now or hereafter acquired, to secure the Companies' obligations under the DIP Facility in accordance with the DIP Facility Term Sheet and any other agreements that may be entered into in connection therewith, including a credit agreement, documents, instruments, financing statements, filings and/or certificates related thereto or that may be necessary or desirable to effect the transactions contemplated thereby (together with all amendments, amendments and restatements, supplements, waivers, renewals, extensions, modifications, substitutions and replacements thereto and thereof, the "***DIP Facility Documents***");

WHEREAS, certain of the Companies are party to existing loan receivables securitization programs (collectively, the "***Securitization Facilities***") with or relating to the following Company subsidiaries which will not be party to the Chapter 11 Cases: (i) First Heritage Financing I, LLC, a Delaware limited liability company, (ii) Heights Financing I, LLC, a Delaware limited liability

company, (iii) Heights Financing II LLC, a Delaware limited liability company, (iv) Curo Canada Receivables Limited Partnership, an Ontario limited partnership, (v) Curo Canada Receivables II Limited Partnership, an Ontario limited partnership, (vi) Curo Canada Receivables GP Inc., an Ontario corporation, and (vii) Curo Canada Receivables II GP Inc., an Ontario corporation (collectively, the "*SPV Entities*", and the agreements, amendments, restatements, supplements, instruments, waivers, consents and other documents entered into in connection with the Securitization Facilities, the "*Securitization Transaction Documents*"); and

**WHEREAS**, each Governing Body has determined, in the business judgment of such Governing Body, that it is advisable and in the best interests of the Companies, their respective creditors and other parties in interest for each applicable Company to continue the Securitization Facilities in the ordinary course of business as contemplated by the Securitization Transaction Documents, notwithstanding the Restructuring Transactions and the Chapter 11 Cases, and, as necessary, to amend the Securitization Transaction Documents and/or waive or obtain the waiver of certain provisions thereunder in connection with the Restructuring Transactions and the Chapter 11 Cases, in each case solely to the extent permitted or not prohibited by the terms of the Operating Agreements or the Securitization Transaction Documents.

## RESTRUCTURING SUPPORT AGREEMENT

**NOW, THEREFORE, BE IT RESOLVED**, that it is appropriate and in the best interests of the Companies and their respective creditors, employees, equityholders and other parties in interest for each of the Companies to enter into and execute the Restructuring Support Agreement and to seek to consummate the transactions contemplated thereby, subject to the terms thereof;

**RESOLVED FURTHER**, that the form, terms and provisions of the Restructuring Support Agreement and the Companies' execution and delivery of the Restructuring Support Agreement and the Companies' performance thereunder, hereby are, in all respects, authorized, approved, adopted and ratified; and

**RESOLVED FURTHER**, that the Chief Executive Officer, President, Chief Financial Officer, Treasurer, Secretary and any other duly elected or appointed officer of each Company, as applicable (the "*Authorized Persons*"), are, and each of them hereby is, authorized, empowered and directed on behalf of, and in the name of, the Companies to execute and deliver to the appropriate parties and to perform each Company's obligations under the Restructuring Support Agreement, including, but not limited to, the execution, delivery and performance of any agreements, documents, instruments or certificates constituting exhibits, annexes or schedules to, or required to be executed pursuant to, the Restructuring Support Agreement, in each case, with such changes therein or additions thereto as the Authorized Person executing the same shall approve and the execution thereof by any such Authorized Person to be conclusive evidence of such approval of such changes or additions.

## CHAPTER 11 FILING

**RESOLVED FURTHER**, that in the business judgment of each Governing Body and based on the recommendation from management and the financial and legal advisors of the

4

Companies, it is desirable and in the best interests of each Company, its creditors and other parties in interest that such Company shall be, and hereby is, authorized to file or cause to be filed a voluntary petition for relief (each, a "***Chapter 11 Case***" and, collectively, the "***Chapter 11 Cases***") under the provisions of chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and

**RESOLVED FURTHER**, that the Authorized Persons are, and each of them hereby is, authorized, empowered and directed to execute and file on behalf of each Company all petitions, schedules, motions, objections, replies, applications, pleadings, lists, documents and other papers, and to take any and all action that such Authorized Persons deem necessary, appropriate or desirable to obtain such relief, including, without limitation, any action necessary, appropriate or desirable to maintain the ordinary course operation of such Company's businesses or to assist such Company in the Chapter 11 Cases and in carrying out its duties under the provisions of the Bankruptcy Code.

## CCAA RECOGNITION APPLICATION

**RESOLVED FURTHER**, that in the business judgment of each Governing Body and based on the recommendation from management and the financial and legal advisors of the Companies, it is desirable and in the best interests of each Company, its creditors and other parties in interest that CURO shall be authorized to serve as the proposed foreign representative of itself and the Canadian Subsidiaries (and such other Company as may be necessary) (the "***Foreign Representative***") and shall be, and hereby is, authorized to file or cause to be filed an application for recognition in Canada under the CCAA of the Chapter 11 Cases of the Canadian Subsidiaries (and the cases of such other Companies as may be necessary) and to seek such other insolvency or bankruptcy relief in Canada as may be necessary (the "***Canadian Recognition Proceedings***"); and

**RESOLVED FURTHER**, that the Authorized Persons are, and each of them hereby is, authorized, empowered and directed to execute and file on behalf of the Foreign Representative and Canadian Subsidiaries (or such other Company, as applicable) all petitions, schedules, motions, objections, replies, applications, pleadings, lists, documents and other papers, and to take any and all action that such Authorized Persons deem necessary, appropriate or desirable to obtain such relief, including, without limitation, any action necessary, appropriate or desirable to maintain the ordinary course operation of such Company's businesses or to assist such Company in the Canadian Recognition Proceedings and in carrying out its duties under the provisions of the CCAA.

## DIP FACILITY TERM SHEET AND DIP FACILITY; ADEQUATE PROTECTION; CASH COLLATERAL

**RESOLVED FURTHER**, that the terms governing the DIP Facility as set forth in the DIP Facility Term Sheet are in the best interests of each Company and each Company's creditors, employees, equityholders and other interested parties and it is in the best interests of each Company and each Company's creditors, employees, equityholders and other interested parties that (i) Borrower make the borrowings contemplated by the DIP Facility, (ii) each Guarantor guarantee the obligations of Borrower thereunder and the obligations specified therein, (iii) each Company grant to the DIP Agent and the DIP Lenders a lien on and a continuing security interest in

substantially all of such Company's property as contemplated by the DIP Facility Term Sheet and (iv) each Company consummate the transactions contemplated by the DIP Facility, including but not limited to, the execution, delivery and performance of the obligations under the DIP Facility Documents;

**RESOLVED FURTHER**, that the Authorized Persons are, and each of them hereby is, authorized, empowered and directed on behalf of, and in the name of, the Companies to obtain the DIP Facility on the terms set forth in the DIP Facility Term Sheet and each other DIP Facility Document, including, but not limited to, the execution, delivery and performance of any agreements, documents, instruments or certificates constituting exhibits, annexes or schedules to, or required to be executed pursuant to, the DIP Facility Documents, in each case, with such changes therein or additions thereto as the Authorized Person executing the same shall approve and the execution thereof by any such Authorized Person to be conclusive evidence of such approval of such changes or additions;

**RESOLVED FURTHER**, that the Companies shall provide certain adequate protection to the Companies' prepetition secured lenders, including adequate protection replacement liens, adequate protection superpriority claims and the receipt of payment of fees and expenses as adequate protection (the "***Adequate Protection Obligations***");

**RESOLVED FURTHER**, that the Companies as debtors and debtors in possession under the Bankruptcy Code be, and hereby are, authorized to negotiate and incur the Adequate Protection Obligations, grant liens, make periodic payments and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Facility Documents (collectively, the "***Adequate Protection Transactions***");

**RESOLVED FURTHER**, that the Authorized Persons are, and each of them hereby is, authorized, empowered and directed on behalf of, and in the name of, the Companies, as debtors and debtors in possession, to take such actions as in his or her reasonable discretion is determined to be necessary, desirable or appropriate and execute the Adequate Protection Transactions, including delivery of (i) the DIP Facility Documents and such agreements, certificates, instruments, guaranties, notices and any and all other documents, including, without limitation, any amendments to any DIP Facility Documents (collectively, the "***Adequate Protection Documents***"), (ii) such other instruments, certificates, notices, assignments and documents as may be reasonably requested by the DIP Agent and (iii) such forms of deposit, account control agreements, officer's certificates and compliance certificates as may be required by the DIP Facility Documents or any other Adequate Protection Document;

**RESOLVED FURTHER**, that the Authorized Persons are, and each of them hereby is, authorized, empowered and directed on behalf of, and in the name of, the Companies to fix the terms of and to enter into, execute, file or deliver security, mortgage, pledge or other collateral agreements, documents, instruments, arrangements or statements, including, but not limited to, such financing statements or comparable documents required under the Uniform Commercial Code, the applicable personal property lien legislation in the relevant Canadian jurisdictions or comparable law as adopted in the relevant jurisdictions, and to make any and all expenditures, to incur any and all expenses, and to pay any and all required fees or taxes, as may be necessary,

appropriate or advisable to create or perfect security interests in favor of the secured parties under the DIP Facility, substantially on the terms described in the DIP Facility Documents;

**RESOLVED FURTHER**, that the Authorized Persons are, and each of them hereby is, authorized, empowered and directed on behalf of, and in the name of, the Companies to take all such further actions, including, without limitation, to pay or approve the payment of adequate protection, appropriate fees and expenses payable in connection with the Adequate Protection Transactions and appropriate fees and expenses incurred by or on behalf of such Company in connection with the foregoing resolutions, in accordance with the terms of the Adequate Protection Documents, which shall in his or her sole judgment be necessary, proper or advisable to perform any of such Company's obligations under or in connection with any of the Adequate Protection Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions; and

**RESOLVED FURTHER**, that each Governing Body, based on the information presented to the Governing Bodies by, and the recommendations of, the management and the financial and legal advisors of the Companies, has determined that it is advisable and in the best interests of the Companies and their respective stakeholders, creditors, and other parties in interest to obtain the benefits from the use of cash collateral (as such term is defined in Bankruptcy Code section 363(a)), which is security for certain of the Companies' prepetition secured lenders, on the terms set forth in the order approving the DIP Facility.

## CONTINUATION OF SECURITIZATION FACILITIES AND AMENDMENTS AND/OR WAIVERS OF SECURITIZATION TRANSACTION DOCUMENTS

**NOW, THEREFORE, BE IT RESOLVED**, that, subject to approval by the Bankruptcy Court, the Authorized Persons are, and each of them hereby is, authorized, empowered and directed on behalf of, and in the name of, the Companies to continue the Securitization Facilities in the ordinary course of business, including, without limitation, (i) continuing selling, pursuant to the applicable Securitization Transaction Documents and free and clear of any and all liens, claims, charges, interests or encumbrances, certain loan receivables and related rights and interests (the "*Receivables*") to the respective counterparties thereto, in accordance with and pursuant to the respective Securitization Transaction Documents, (ii) continue servicing and collecting the Receivables pursuant to the respective applicable Securitization Transaction Documents and (iii) CURO continuing to guarantee, pursuant to the respective applicable Securitization Transaction Documents, the obligations of the Companies and the Company subsidiaries party thereto under the Securitization Transaction Documents to which they are a party;

**RESOLVED FURTHER**, that the Authorized Persons are, and each of them hereby is, authorized, empowered and directed on behalf of, and in the name of, the Companies to cause and direct each of the respective SPV Entities to perform or continue to perform under each of the Securitization Transaction Documents to which such SPV Entity is a party; and

**RESOLVED FURTHER**, that the Authorized Persons are, and each of them hereby is, authorized, empowered and directed on behalf of, and in the name of, the applicable Companies, to take such actions as in his or her reasonable discretion is determined to be necessary, desirable

7

or appropriate with respect to waivers and/or amendments to the Securitization Transaction Documents, including to fix the terms of any such waiver and/or amendment, to solicit, enter into, execute, file or deliver any such waiver and/or amendment in connection with the Restructuring Transactions and the Chapter 11 Cases, and to perform the transactions in connection with any such waiver and/or amendment, in each case solely to the extent permitted or not prohibited by the terms of the Operating Agreements or the Securitization Transaction Documents.

## RETENTION OF PROFESSIONALS

**RESOLVED FURTHER**, that the employment by the applicable Companies of, and the execution by the applicable Companies of appropriate retention agreements with, KS and Akin to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance such Company's rights and obligations, including filing any petitions, schedules, motions, objections, replies, applications, pleadings, lists, documents and other papers and conducting any sales process on behalf of each Company and in connection therewith, be, and hereby are, ratified, approved and adopted in all respects, and the payment of appropriate retainers to, and the filing of an appropriate application for authority to retain in accordance with applicable law, KS and Akin by any of the Authorized Persons on behalf of the applicable Companies, with power of delegation, be, and hereby are, ratified, approved and adopted in all respects;

**RESOLVED FURTHER**, that the employment by the applicable Companies of, and the execution by the applicable Companies of appropriate retention agreements with, Cassels as Canadian bankruptcy counsel to provide Canadian legal advice to the Companies and the Foreign Representative, to represent and assist each Company and the Foreign Representative in carrying out its duties under the CCAA and the Canadian Recognition Proceedings (as applicable), and to take any and all actions to advance the Foreign Representative's and each such Company's rights and obligations, including filing any petitions, schedules, motions, objections, replies, applications, pleadings, lists, documents and other papers and conducting any sales process on behalf of each Company and in connection therewith, be, and hereby are, ratified, approved and adopted in all respects, and the payment of appropriate retainers to, and, if required, the filing of an appropriate application for authority to retain in accordance with applicable law, Cassels by any of the Authorized Persons on behalf of the applicable Companies, with power of delegation, be, and hereby are, ratified, approved and adopted in all respects;

**RESOLVED FURTHER**, that each of the Authorized Persons be, and hereby is, authorized and directed to pay the fees and expenses of FTI Consulting Canada Inc., as the proposed Canadian Court appointed Information Officer in the Canadian Recognition Proceedings, and its counsel, Bennett Jones LLP, in connection with the Canadian Recognition Proceedings and, as applicable, on such terms and conditions as the Canadian Court shall subsequently approve;

**RESOLVED FURTHER**, that the employment by the applicable Companies of, and the execution by the applicable Companies of appropriate retention agreements with, Oppenheimer as investment banker to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance such Company's rights and obligations, be, and hereby are, ratified, approved and adopted in all respects, and the payment of

appropriate retainers to, and the filing of an appropriate application for authority to retain in accordance with applicable law, Oppenheimer by any of the Authorized Persons on behalf of the applicable Companies, with power of delegation, be, and hereby are, ratified, approved and adopted in all respects;

**RESOLVED FURTHER**, that the employment by the applicable Companies of, and the execution by the applicable Companies of appropriate retention agreements with, Epiq Corporate Restructuring, LLC ("*Epiq*") as claims, noticing and solicitation agent to provide consulting services to each Company, including, but not limited to, noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and assisting with the preparation of each Company's schedules of assets and liabilities and a statement of financial affairs and any other services agreed upon by the parties relating to each Company's duties under the Bankruptcy Code and in connection therewith, be, and hereby are, ratified, approved and adopted in all respects, and the payment of appropriate retainers to, and the filing of an appropriate application for authority to retain in accordance with applicable law, Epiq by any of the Authorized Persons on behalf of the applicable Companies, with power of delegation, be, and hereby are, ratified, approved and adopted in all respects;

**RESOLVED FURTHER**, that each of the Authorized Persons be, and hereby is, authorized and directed to employ any other professionals to assist each Company in carrying out the purposes of these resolutions and its duties under the Bankruptcy Code and in connection therewith, as applicable, each of the Authorized Persons on behalf of the applicable Companies, with power of delegation, is hereby authorized and directed on behalf of the applicable Companies to execute appropriate retention agreements, pay appropriate retainers and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary; and

**RESOLVED FURTHER**, that each of the Authorized Persons be, and hereby is, with power of delegation, authorized, empowered and directed on behalf of the applicable Companies to execute and file all petitions, schedules, motions, objections, replies, applications, pleadings, lists and other papers and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, investment bankers, financial advisors, restructuring advisors and other professionals and to take and perform any and all further acts and deeds that each of the Authorized Persons deems necessary, appropriate, or desirable in connection with each Company's Chapter 11 Case or the Canadian Recognition Proceedings, with a view to the successful prosecution of the applicable proceeding, and cause to be executed and filed appropriate applications with the Bankruptcy Court or the Canadian Court for authority to retain the services of any other professionals, as necessary.

## NYSE DELISTING AND SEC DEREGISTRATION

**WHEREAS**, CURO's common stock, par value $0.001 per share (the "*Common Stock*"), is listed on the New York Stock Exchange (the "*NYSE*");

**WHEREAS**, the Common Stock is registered under Section 12(b) of the Securities Exchange Act of 1934, as amended (the "*Exchange Act*"), subjecting CURO to a reporting

obligation under Section 13(a) of the Exchange Act;

**WHEREAS**, CURO has an effective Registration Statement on Form S-8 with respect to its 2017 Incentive Plan filed on December 7, 2017 (Registration No. 333-221945) (the "***Original Form S-8***") and an additional effective Registration Statement on Form S-8 with respect to its 2017 Incentive Plan filed on June 17, 2021, as amended on June 29, 2021 (Registration No. 333-257167) (the "***Additional Form S-8***" and, together with the Original Form S-8,  the "***Forms S-8***"), which Registration Statements may also subject CURO to a reporting obligation pursuant to Section 15(d) of the Exchange Act;

**WHEREAS**, (i) on October 16, 2023, CURO received notice from the NYSE that CURO was no longer in compliance with the NYSE continued listing standard set forth in Section 802.01B of the NYSE's Listed Company Manual due to the fact that the Company's average global market capitalization over a consecutive 30 trading-day period was less than $50 million and, at the same time, its stockholders' equity was less than $50 million and a failure to regain compliance with such standard within eighteen months of receiving the notice would result in the initiation of NYSE suspension and delisting procedures; and (ii) on October 27, 2023, CURO received notice from the NYSE that CURO was no longer in compliance with the NYSE continued listing standard set forth in Section 802.01C of the NYSE's Listed Company Manual due to the fact that the average closing price of the Common Stock, over the prior 30 consecutive trading days was below $1.00 per share and a failure to regain compliance with such standard within six months of receiving the notice would result in the initiation of NYSE suspension and delisting procedures;

**WHEREAS**, the Governing Body of CURO has taken due and careful consideration of all of the facts and circumstances, including, but not limited to, (i) Holding's current status as an Exchange Act reporting company; (ii) the anticipated filing of petitions for the Chapter 11 Cases (as defined above); (iii) the potential need for CURO to access the public markets for capital and CURO's potential ability to successfully access such markets; (iv) the administrative, legal and audit costs associated with compliance with Exchange Act reporting obligations; (v) the increased flexibility and time for management to focus on the day to day operations of CURO's business instead of Exchange Act reporting obligations and (vi) the cost associated with compliance with the Sarbanes-Oxley Act of 2002;

**WHEREAS**, CURO had fewer than 300 holders of record of its Common Stock at the beginning of its most recent fiscal year; and

**WHEREAS**, the Governing Body of CURO, upon the advice of the Companies' advisors and after due and careful consideration of all of the facts and circumstances, has determined that it is advisable and in the best interests of CURO and its respective stakeholders, creditors, and other parties in interest to: (i) withdraw the Common Stock from their NYSE listing (the "***Delisting***"); (ii) terminate the registration of the Common Stock under Section 12(b) of the Exchange Act, which would terminate CURO's obligation to file reports pursuant to Section 13(a) of the Exchange Act (the "***Deregistration***") and (iii) suspend CURO's obligation to file reports pursuant to Section 15(d) of the Exchange Act (the "***Suspension***").

**NOW, THEREFORE, BE IT RESOLVED**, that the Governing Body of CURO does

hereby in all respects approve, adopt, ratify and confirm the Delisting, the Deregistration and the Suspension; and

**RESOLVED FURTHER**, that the Authorized Persons are, and each of them hereby is, authorized, empowered and directed on behalf of, and in the name of, CURO to execute, certify, verify, acknowledge, deliver, accept, file, and record all reports, agreements, notifications, schedules, statements, documents, press releases and information with NYSE, the United States Securities and Exchange Commission (the "*SEC*") and as otherwise required by the rules of NYSE and the SEC, in each case, in connection with, or that are necessary, appropriate or desirable to effect, the Delisting, Deregistration, and Suspension, including, but not limited to: (i) delivering notice to NYSE of CURO's intention to delist the Common Stock from NYSE; (ii) publishing a press release of CURO's intention to delist the Common Stock from NYSE and (iii) filing with the SEC (A) post-effective amendments to the Forms S-8 to remove from registration under the Securities Act of 1933, as amended, all remaining unsold Common Stock covered thereby; (B) a Form 25 to delist the shares of Common Stock from trading on NYSE and to terminate the registration of the Common Stock under Section 12(b) of the Exchange Act, to the extent NYSE has not already filed a Form 25 with respect to CURO's Common Stock; (C) a Form 15 to notify the SEC of the suspension of CURO's obligation to file reports pursuant to Section 15(d) of the Exchange Act and (D) such Current Reports on Form 8-K as are necessary, appropriate or desirable in connection with the foregoing.

## GENERAL AUTHORITY

**RESOLVED FURTHER**, that the Authorized Persons are, and each of them hereby is, authorized and directed to take such further steps and execute and deliver such further documents, instruments, agreements, consents and filings as such officers, with the advice of counsel, may deem necessary or desirable to carry out any transactions contemplated by the above resolutions;

**RESOLVED FURTHER**, that the authority conferred upon any Authorized Person by these resolutions are in addition to, and shall in no way limit, such other authority as such Authorized Person may have with respect to the subject matter of the foregoing resolutions, and in addition to the specific authorizations heretofore conferred upon the Authorized Persons, each of the Authorized Persons (and their designees and delegates) be, and hereby is, authorized and empowered, in the name of and on behalf of each Company, to take or cause to be taken any and all such other and further action, and to execute, acknowledge, deliver, file and/or record any and all such agreements, certificates, instruments and other documents and to pay all expenses, including but not limited to any and all required fees or taxes, in each case as in such Authorized Person's judgment, shall be necessary, appropriate or desirable in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

**RESOLVED FURTHER**, that any and all acts, transactions, agreements or certificates previously signed on behalf of each Company by any Authorized Officer in connection with or furtherance of the foregoing resolutions that are consistent with the foregoing resolutions be, and hereby are, in all respects approved, adopted, confirmed and ratified in all respects as the true acts and deeds of such Company, with the same force and effect as if each such act, transaction, agreement or certificate had been specifically authorized in advance by resolution of the Governing

11

Body of such Company and such officer(s) did execute the same;

**RESOLVED FURTHER**, that the omission from these resolutions of any agreement or other arrangement contemplated by any of the agreements described in the foregoing resolutions or any action to be taken in accordance with any requirement of any of the agreements described in the foregoing resolutions shall in no manner derogate from the authority of any Authorized Person to take all actions necessary, desirable, advisable or appropriate to consummate, effectuate, carry out or further the matters contemplated by and the intent and purposes of the foregoing resolutions;

**RESOLVED FURTHER**, that if any resolution contained herein shall be adjudicated by a court of competent jurisdiction to be invalid, prohibited or unenforceable for any reason, then, to the greatest extent permitted by applicable law, such resolution, solely with respect to such jurisdiction, shall be ineffective, without affecting the validity or enforceability of any other resolution in such jurisdiction and without affecting the validity or enforceability of any resolution in any other jurisdiction;

**RESOLVED FURTHER**, that the Authorized Persons of each Company are, and each of them hereby is, authorized, empowered and directed to certify and furnish such copies of these resolutions and such statements as to the incumbency of such Company's officers, under seal if necessary, as may be requested, and any person receiving such certified copy is and shall be authorized to rely upon the contents thereof;

**RESOLVED FURTHER**, that this written consent may be executed in multiple counterparts, all of which shall be considered one and the same consent and shall become effective when signed by a majority of the members, all of the directors, a majority of the managers or the general partner, as applicable, of the applicable Governing Bodies; and

**RESOLVED FURTHER**, that this consent may be executed and delivered by means of facsimile, telecopy or other electronic transmission (including email of a "pdf" signature), this consent shall be treated in all manners and respects and for all purposes as an original consent and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, each undersigned Governing Body has duly executed this written consent as of the date first written above.

**BOARD OF DIRECTORS:**
**CURO GROUP HOLDINGS CORP.**

_____
Douglas D. Clark

_____
Chadwick Faulkner

_____
Andrew Frawley

_____
Robert Hurzeler

_____
David Kirchheimer

_____
Christopher Masto

_____
Gillian Van Schaick

_____
Issac Vaughn

[Signature Page to Written Consent of the Governing Bodies]

**BOARD OF DIRECTORS:**
**CURO FINANCIAL TECHNOLOGIES CORP.**
**CURO INTERMEDIATE HOLDINGS CORP.**
**SOUTHERNCO, INC.**
**HEIGHTS FINANCE HOLDING CO.**
**SOUTHERN FINANCE OF SOUTH CAROLINA,**
**INC.**
**SOUTHERN FINANCE OF TENNESSEE, INC.**
**COVINGTON CREDIT OF ALABAMA, INC.**
**QUICK CREDIT CORPORATION**
**COVINGTON CREDIT, INC.**
**COVINGTON CREDIT OF GEORGIA, INC.**
**HEIGHTS FINANCE CORPORATION**


_____
Douglas D. Clark


_____
Rebecca Fox


_____
Gary L. Fulk

[Signature Page to Written Consent of the Governing Bodies]

**BOARD OF DIRECTORS:**
**CURO FINANCIAL TECHNOLOGIES CORP.**
**CURO INTERMEDIATE HOLDINGS CORP.**
**SOUTHERNCO, INC.**
**HEIGHTS FINANCE HOLDING CO.**
**SOUTHERN FINANCE OF SOUTH CAROLINA,**
**INC.**
**SOUTHERN FINANCE OF TENNESSEE, INC.**
**COVINGTON CREDIT OF ALABAMA, INC.**
**QUICK CREDIT CORPORATION**
**COVINGTON CREDIT, INC.**
**COVINGTON CREDIT OF GEORGIA, INC.**
**HEIGHTS FINANCE CORPORATION**

_____
Douglas D. Clark

_____
Rebecca Fox

_____
Gary L. Fulk

**BOARD OF DIRECTORS:**
**CURO FINANCIAL TECHNOLOGIES CORP.**
**CURO INTERMEDIATE HOLDINGS CORP.**
**SOUTHERNCO, INC.**
**HEIGHTS FINANCE HOLDING CO.**
**SOUTHERN FINANCE OF SOUTH CAROLINA,**
**INC.**
**SOUTHERN FINANCE OF TENNESSEE, INC.**
**COVINGTON CREDIT OF ALABAMA, INC.**
**QUICK CREDIT CORPORATION**
**COVINGTON CREDIT, INC.**
**COVINGTON CREDIT OF GEORGIA, INC.**
**HEIGHTS FINANCE CORPORATION**

_____
Douglas D. Clark


_____
Rebecca Fox


_____
Gary L. Fulk

**BOARD OF MANAGERS:**
**CURO CREDIT, LLC**
**ATTAIN FINANCE, LLC**

_____
Stephen Foster


_____
Gary L. Fulk

**BOARD OF MANAGERS:**
**CURO CREDIT, LLC**
**ATTAIN FINANCE, LLC**

_____
Stephen Foster

_____
Gary L. Fulk

**BOARD OF MANAGERS:**
**CURO MANAGEMENT, LLC**

_____
Douglas D. Clark


_____
Stephen Foster

**BOARD OF MANAGERS:**
**CURO MANAGEMENT, LLC**

_____
Douglas D. Clark

_____
Stephen Foster

**BOARD OF DIRECTORS:**
**AD ASTRA RECOVERY SERVICES, INC.**

_____
Stephen Foster


_____
Gary L. Fulk

**BOARD OF DIRECTORS:**
**AD ASTRA RECOVERY SERVICES, INC.**


_____
Stephen Foster


_____
Gary L. Fulk

**BOARD OF DIRECTORS:**
**COVINGTON CREDIT OF TEXAS, INC.**

_____
Douglas D. Clark


_____
Stephen Foster


_____
Rebecca Fox


_____
Gary L. Fulk

**BOARD OF DIRECTORS:**
**COVINGTON CREDIT OF TEXAS, INC.**

_____
Douglas D. Clark

_____
Stephen Foster

_____
Rebecca Fox

_____
Gary L. Fulk

[Signature Page to Written Consent of the Governing Bodies]

**BOARD OF DIRECTORS:**
**COVINGTON CREDIT OF TEXAS, INC.**

_____
Douglas D. Clark

_____
Stephen Foster

_____
Rebecca Fox

_____
Gary L. Fulk

**BOARD OF DIRECTORS:**
**COVINGTON CREDIT OF TEXAS, INC.**


_____

Douglas D. Clark


_____

Stephen Foster


_____

Rebecca Fox


_____

Gary L. Fulk

**SOLE DIRECTOR:**
**HEIGHTS FINANCE CORPORATION**


_____
Douglas D. Clark

**CURO INTERMEDIATE HOLDINGS CORP.,**
**as sole member of**
**CURO CREDIT, LLC**
**ATTAIN FINANCE, LLC**
**CURO MANAGEMENT, LLC**
**CURO COLLATERAL SUB, LLC**
**CURO VENTURES, LLC**
**ENNOBLE FINANCE, LLC**


_____
Name:  Douglas D. Clark
Title:    President

[Signature Page to Written Consent of the Governing Bodies]

**CURO INTERMEDIATE HOLDINGS CORP.,**
**as sole manager of**
**FIRST HERITAGE CREDIT, LLC**


_____
Name:  Douglas D. Clark
Title:   President

**FIRST HERITAGE CREDIT, LLC,**
**as sole manager of**
**FIRST HERITAGE CREDIT OF ALABAMA, LLC**
**FIRST HERITAGE CREDIT OF LOUISIANA, LLC**
**FIRST HERITAGE CREDIT OF MISSISSIPPI,**
**LLC**
**FIRST HERITAGE CREDIT OF SOUTH**
**CAROLINA, LLC**
**FIRST HERITAGE CREDIT OF TENNESSEE,**
**LLC**


Name:  Douglas D. Clark
Title:    President

**BOARD OF DIRECTORS:**
**LENDDIRECT CORP.**
**CURO CANADA CORP.**


_____
Gary L. Fulk


_____
Alberto Luis

**BOARD OF DIRECTORS:**
**LENDDIRECT CORP.**
**CURO CANADA CORP.**


_____
Gary L. Fulk


_____ _____
Alberto Luis

## **Schedule I**

## **Companies**

1. CURO Group Holdings Corp.

2. Curo Financial Technologies Corp.

3. Curo Intermediate Holdings Corp.

4. Curo Management, LLC

5. Curo Collateral Sub, LLC

6. CURO Ventures, LLC

7. CURO Credit, LLC

8. Ennoble Finance, LLC

9. Ad Astra Recovery Services, Inc.

10. Attain Finance, LLC

11. First Heritage Credit, LLC

12. First Heritage Credit of Alabama, LLC

13. First Heritage Credit of Louisiana, LLC

14. First Heritage Credit of Mississippi, LLC

15. First Heritage Credit of South Carolina, LLC

16. First Heritage Credit of Tennessee, LLC

17. SouthernCo, Inc.

18. Heights Finance Holding Co.

19. Southern Finance of South Carolina, Inc.

20. Southern Finance of Tennessee, Inc.

21. Covington Credit of Alabama, Inc.

22. Quick Credit Corporation

23. Covington Credit, Inc.

24. Covington Credit of Georgia, Inc.

25. Covington Credit of Texas, Inc.

26. Heights Finance Corporation, an Illinois corporation

27. Heights Finance Corporation, a Tennessee corporation

28. LendDirect Corp.

29. Curo Canada Corp.

[Exhibits Omitted]